FILED
2007 Mar-05  AM 07:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARK THROWER, d/b/a** | ) | |
| **THROWER AUTO SALES**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. CV-06-1551-VEH |
| v. | ) | |
| | ) | |
| | ) | |
| **CITY OF BIRMINGHAM,** | **)** | |
| **a municipal corporation,** | **)** | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is a Motion for Summary Judgment filed by Defendant, the

City of Birmingham, on all of Mark Thrower's (hereinafter "Plaintiff") claims. (Doc.

7). This Motion has been briefed by both parties. For the reasons set forth herein,

Defendant's Motion is due to be **GRANTED**.

**I.     PLAINTIFF'S COMPLAINT**

When reasonably construed, Plaintiff's Complaint (Doc. 1) asserts three claims

against Defendant: (1) Defendant violated Plaintiff's right to procedural due process

by failing to notify him prior to the sale of his property; (2) Defendant violated

Plaintiff's right to equal protection by treating him differently from other similarly

situated lienholders within its jurisdiction; and (3) Plaintiff wrongfully converted his property by failing to timely inform him of its impending sale.  Plaintiff's first two claims arise under the Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiff's third claim arises under Alabama law.

The City of Birmingham is the only defendant named in Plaintiff's Complaint. Plaintiff seeks all compensatory and punitive damages that this court deems appropriate, in addition to costs and attorney fees.  (Doc. 1, Pl.'s Compl. ¶ 27). Plaintiff finally requests an injunction to prevent Defendant from continuing its practice of selling impounded vehicles in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  (Id.).

## II.    FACTUAL HISTORY

The facts stated herein are for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'") (citation omitted).

Defendant lawfully impounded a 1993 Buick (hereinafter "the Buick") on November 28, 2004, following the arrest of the Buick's driver.[1]  (Doc. 8, Ex. 1,

---

[1]The record does not clearly identify the driver.

Birmingham Police Arrest Report # 041158511).  Using the Vehicle Identification Number of the Buick and the Birmingham Criminal Justice System, (hereinafter "BCJS"), Auto Theft police detectives identified Alvin Tucker (hereinafter "Tucker") of Tuskegee, Alabama, as the Buick's owner, and Plaintiff, also of Tuskegee, as a lien holder for the automobile.  (Id., Ex. 2A, Birmingham Criminal Justice System Records of 1993 Buick, VIN # 1G4HR53LPH4111354).  On November 29, 2004, Defendant sent two letters to Tucker and one letter to Plaintiff, notifying both parties of the Buick's impoundment.[2]  (Id., Ex. 2B, Copy of Pre-Sale Letters to the Buick's Owner and to Plaintiff).  Defendant mailed all three letters to addresses obtained through the BCJS.  (Id., Ex. 2, Carr Affidavit, pp. 2-3; 2A, 2B).  The letters informed Tucker and Plaintiff that the Buick would be sold if neither party timely claimed the vehicle.  (Id., Ex. 2B).

When Tucker ceased to make payments to Plaintiff for the Buick in December 2004, Plaintiff began steps to repossess the vehicle.  (Doc. 10, Ex. 3, ¶¶ 4-5). Meanwhile, none of the three letters were returned to Defendant as undelivered by the U.S. Postal Service.[3]  (Doc. 8, Ex. 2, Carr Affidavit, pg. 3).  Defendant received no response from either Tucker or Plaintiff.  (Id., Ex. 2, pg. 3; Ex. 3, pg. 2).  Before the

---

[2] Plaintiff disputes that Defendant ever mailed notice to him, but the only evidence is that Defendant did mail the notice, although Plaintiff did not receive it.

[3] The Plaintiff does not assert that Defendant mailed the letters to the wrong address.

sale of the Buick, Defendant published notice of the auction in the Birmingham Post-Herald.  (Id., Ex. 3A).  On January 27, 2005, sixty (60) days after the Buick was impounded, Defendant sold the vehicle by public auction to Mr. Terry Stodghill (hereinafter "Stodghill").[4]

In February 2005, Stodghill notified Plaintiff by letter that Stodghill had purchased the Buick from Defendant.  (Doc. 10, Ex. 6; Ex. 7, ¶¶ 4-5).  Via letter dated February 21, 2005, Plaintiff then requested Defendant's advice regarding his rights to the Buick.  (Id., Ex. 8).  In March 2005, Defendant informed Plaintiff that the Buick had been sold.  (Id., Ex. 9).  Plaintiff sent a second letter to Defendant on May 24, 2005 in which Plaintiff asserted a claim to the Buick arising under his lien on the vehicle.  (Id., Ex. 8).  Defendant responded by a letter in which it denied Plaintiff's claim to the Buick.  (Id., Ex. 9).

On September 22, 2005, the Alabama Department of Revenue held a hearing in which an Administrative Law Judge (hereinafter "the ALJ") was to determine the proper ownership of the Buick.  (Doc. 10, Ex. 10).  Defendant failed to appear at this hearing, and claims it was not named as a party to it.  (Id.).  On September 29, 2005,

---

[4] Defendant conducted the auction pursuant to § 10-14-7 of the General Code of the City of Birmingham.  § 10-14-7 requires that notice be provided by publication in a newspaper of statewide circulation.  However, Defendant asserts that it is its custom, practice, and policy to also give notice by First Class United States mail to the address(es) listed in the BCJS.

the ALJ issued an order suspending Mr. Stodghill's title to the Buick. (Id., Ex. 11, pg. 3). The ALJ explained that the Department of Revenue would not issue title to any impounded vehicle sold by Defendant via public auction because the Birmingham City Code did not require actual notice of the sale to the owner and lienholders of record, thereby denying those parties procedural due process. (Id.).

Plaintiff initiated the instant action on August 7, 2006. (Doc. 1). Defendant filed a Motion to Dismiss and in the Alternative for Summary Judgment on September 12, 2006. (Doc. 7). Plaintiff filed his Response to Defendant's Motion on October 18, 2006. (Doc. 10). Defendant filed a Reply Brief on November 2, 2006. (Doc. 13).

## III.   STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.E.d2d 265 (1986). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual dispute exists only as to issues which a "reasonable jury could return a verdict for the non-moving party."

*Info.Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).

The movant bears the initial burden to identify evidence that demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The movant may satisfy this burden by showing that the non-movant has failed to prove an essential element of his or her case. *Real Estate Financing v. Resolution Trust Corp.*, 950 F.2d 1540, 1543 (11th Cir. 1992). Once the movant has met this burden, the non-movant must demonstrate the existence of a material factual issue for the district court to decide. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). If the facts are in dispute, they are stated in the manner most favorable to the non-movant. *Gordon v. Hamm,* 100 F.3d 907, 910 (11th Cir. 1996)*; see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the non-movant fails to satisfy its burden, the court must grant summary judgment. *Real Estate Financing*, 950 F.2d at 1543.

## IV.   ANALYSIS

### A.     42 U.S.C. § 1983

42 U.S.C. § 1983 states in part that

Every person who, under color of any statute, ordinance, regulation,

6

custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Defendant may be liable under 42 U.S.C. § 1983 only if it violated a constitutional right through its enforcement of an official policy or practice. *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002), *per curiam*, quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *Jett v. Dallas Indep. Sch, Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2719, 105 L.Ed.2d 598 (1989). Plaintiff must show that a municipal officer with "final policymaking authority" acted with an improper motive. *Id.*, quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Plaintiff may argue that an officer with final policymaking authority delegated his authority to another person who is otherwise not subject to review by the original policymaker. *Id.* at 1297, citing *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Defendant may be liable if the final policymaker ratified both the decision of the officer who acted with an improper motive and the unconstitutional basis for the decision. *Id.*, citing *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998).

Plaintiff argues that the State of Alabama, with final policymaking authority,

delegated its authority to Defendant through an enabling statute, by which it authorized Defendant to draft ordinances.  Plaintiff explains neither the content nor the purpose of these ordinances, but merely jumps to the assertion that Defendant's notification procedure prior to the sale of the Buick was "deficient of constitutional standards of notice."  (Doc. 10, pg. 13).

Plaintiff argues that Defendant may be liable under § 1983 in one of two ways. First, Defendant may be liable if Plaintiff demonstrates

> a widespread practice that, although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law.

*Brown v. Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).  Defendant may also be liable under § 1983 if Plaintiff shows that the alleged constitutional violation was caused by a person with "final authority to establish municipal policy with respect to the action ordered."  *Id*., 1480, citing *Pembaur v. Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

As explained below, the court does find any basis for Defendant's liability under § 1983.  Plaintiff has failed to direct the court's attention to any improper motive by Defendant's Chief of Police or its Finance Director--both final policymakers for matters relating to this case--when they authorized the sale of the

8

Buick. Plaintiff offers no evidence of such an improper motive exercised by Defendant.

Furthermore, neither prong of Plaintiff's argument under the *Brown* framework is applicable to Defendant's conduct in this case. Under the first prong, Plaintiff has offered no evidence of a "widespread practice" by which Defendant violated Plaintiff's constitutional rights. Second, Plaintiff has failed to show that he suffered a constitutional injury that was caused by a person with final policymaking authority. On the contrary, Defendant's conduct in this case shows that it followed every necessary step to ensure that Plaintiff's constitutional rights were preserved.

### 1.   Due Process

In the Eleventh Circuit, a procedural due process claim brought under § 1983 must show (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Defendant does not dispute that Plaintiff held a property interest in the Buick that arose from his status as a lienholder of the vehicle. Furthermore, as a municipality, Defendant does not dispute that its impoundment and sale of the Buick constituted state action.

Plaintiff argues that his failure to receive actual notice of the auction satisfies

9

the third element of the *Grayden* test.  The United States Supreme Court has held that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 699, 151 L.Ed.2d 597, quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).  A party's "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

While Plaintiff argues that his failure to receive notice is per se a violation of his right to procedural due process, Defendant points out that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, – U.S.– , 126 S.Ct. 1708, 1713, 164 L.Ed.2d 415 (2006), citing *Dusenbery*, 534 U.S. at 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). On the contrary, it is well settled that notice must be "'*reasonably calculated,* under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed.

10

865 (1950) (emphasis added).  "The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."  *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657.

Plaintiff evades this standard in his argument, alleging instead that Defendant must present tangible proof that actual notice was given, such as a certified mail return receipt.  However, Plaintiff cites to no binding authority in support of this theory.

It is well settled that Defendant was obligated only to "attempt to provide actual notice; it [was] not require[d] [to] demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v. United States*, 417 F.3d 1189 (11th Cir. 2005), citing *Dusenbery*, 534 U.S. at 170, 122 S.Ct. at 701.

Plaintiff contends that Defendant never attempted to notify him of the auction. His only support for this statement is that Defendant has no tangible proof that it attempted to notify him.  However, Defendant presented the affidavit of its employee, Phyllis J. Carr, who swore that she "mailed a notice [of the impoundment] to [Plaintiff],' (Doc. 8, Ex. 2, Carr Affidavit, p.2).[5]

---

[5]Plaintiff asserts that the question whether Defendant attempted to notify him is one of fact and therefore appropriate for a jury to decide, thus compelling the court to deny Defendant's Motion for Summary Judgment.

11

Defendant cites to a wealth of binding authority that consistently explains the standard for notification under procedural due process. Plaintiff points out that several of these cases involve notification by certified mail. See, e.g., *Jones*, 126 S.Ct. 1708, *Dusenbery*, 534 U.S. 161. Plaintiff asks this court to conclude that certified mail is therefore required to satisfy procedural due process. However, not one of these cases holds that notification by mail satisfies due process only if certified mail is used. Furthermore, none of these cases concludes that notification by mail was adequate *because* tangible proof of receipt, such as the return receipt associated with certified mail, could be shown.

Defendant attempted to provide actual notice by mailing Plaintiff a letter informing him of the auction of the Buick prior to the sale. (Doc. 8, Ex. 2, Carr Affidavit, pp. 2-3; Ex. 2A; Ex. 2B). The letter was never returned to Defendant (id.), thus giving "[no indication] that anything had gone awry" in Defendant's efforts to give Plaintiff actual notice. See *Jones*, 126 S.Ct. at 1714; *Dusenbery*, 534 U.S. 168-69, 122 S.Ct. 694; *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. When Plaintiff failed to claim the vehicle, Defendant proceeded to sell the Buick in accordance with its policy for disposing of unclaimed vehicles. Nothing in Defendant's manner of notifying Plaintiff or of selling the Buick alerts the court to any violation of Plaintiff's right to procedural due process. Consequently, the court finds that Plaintiff's due process

12

claim must fail.[6]

### 2.    Equal Protection

A successful Equal Protection claim brought under § 1983 requires Plaintiff to show that (1) he was treated differently from other similarly situated lienholders subject to Defendant's jurisdiction; and (2) Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him.   *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006).

Plaintiff alleges that Defendant treated him differently from other similarly situated lienholders, but he offers no factual support to verify this claim.   On the contrary, his only evidentiary support is the fact that the cities of Montgomery and Mobile provide notice to lienholders of impounded vehicles via certified mail, while Defendant provides notice through First Class mail.   Plaintiff does not allege that Defendant unequally applied either its notification ordinance or its notification policy when it attempted to notify him of the auction.

---

[6]Plaintiff also takes issue with Defendant's notification by publication in the Birmingham Post-Herald.  Plaintiff alleges that due process is not satisfied unless such publication is made through a newspaper of statewide circulation, which he alleges the Birmingham Post-Herald is not.  However, because the court has concluded that due process standards were satisfied by and through Defendant's attempted notification by mail, the court need not address this concern.

Secondly, Defendant argues that Plaintiff's due process claim should be dismissed because Plaintiff failed to take advantage of pre-sale remedies offered to him pursuant to the General City Code of Birmingham § 10-14-8.  However, because the court finds that Defendant's notification procedure meets due process requirements, the court need not address this issue.

The court finds no authority, and Plaintiff has cited to none, that compels Defendant to operate under the same policies as other municipalities in the state with regard to notifying lienholders of impending auctions of motor vehicles. Furthermore, the issue before the court is not how Defendant treats lienholders in comparison to other municipalities. The court must determine whether Defendant has treated Plaintiff differently from other lienholders of vehicles that are lost, abandoned, or unclaimed in its own jurisdiction. Plaintiff has not addressed this issue, nor has he offered any evidence to aid the court in reaching a conclusion as to this claim. Defendant, on the other hand, produced sworn testimony that it notified Plaintiff of the auction in the same manner in which it notifies all other lienholders of impounded motor vehicles. (Doc. 8, Ex. 2, Carr Affidavit). Plaintiff does not dispute this testimony.

Plaintiff also points to Ala. Code 1975 § 32-13-4(a) in support of his Equal Protection claim. § 32-13-4(a) requires that

> Any . . . governmental entity on whose property a motor vehicle is lawfully towed at the written request of a law-enforcement officer . . . shall give written notice to the current owners . . . and lienholders of record for the motor vehicle at least 30 days prior to the sale of the motor vehicle. . . . (5) The notice required by this section shall be deemed to be given when sent *by certified mail*, postage prepaid, to the address of the current owners . . . and lienholders of record . . . for the motor vehicle. . . . (Emphasis added).

14

While the above-quoted statute appears to require Defendant to provide notice by certified mail, Plaintiff concedes that Ala. Code 1975 § 32-13-1, *et seq*., did not apply to Defendant at the time of the events in question.  The Act was amended to include "government entities" such as Defendant in its coverage in 2006, almost two years after Defendant impounded the Buick and sold it to Terry Stodghill.

Plaintiff apparently bases his reliance on Ala. Code 1975 § 32-13-4(a) on the fact that it provides "a framework for insuring that due process is met."  (Doc. 10).  However, Plaintiff cites to this section of the Code in support of its Equal Protection claim, which requires a different analysis from that applicable to Due Process.  Assuming for the sake of argument that § 32-13-4(a) was offered in support of Plaintiff's Due Process claim, however, the court has already found ample binding authority which establishes that, under the facts and circumstances of this case, Defendant's method of providing notice to Plaintiff (that is, by First Class mail to the correct address) satisfies due process.

Plaintiff offers no evidence in support of his contention that he was treated differently from other similarly situated lienholders within Defendant's jurisdiction.  He has failed to direct the court's attention to even one lienholder within Defendant's jurisdiction who was treated differently from Plaintiff with regard to notification of an impending auction.  Because the court finds no evidence of any Equal Protection

violation in Defendant's conduct, Plaintiff's claim must fail.

**B.    Conversion**

Plaintiff alleges that Defendant's failure to give proper notice of the impoundment of the Buick resulted in the conversion of his property. To succeed on this claim, Plaintiff must demonstrate that Defendant's conduct resulted in "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of [Plaintiff's] property, or a wrongful detention or interference with [Plaintiff's] property." *SouthTrust Bank v. Donely*, 925 So.2d 940 (Ala. 2005); *Riscorp, Inc. v. Norman*, 915 So.2d 1142, 1152 (Ala. 2005)(quoting *Crown Life Ins. Co. v. Smith*, 657 So.2d 821, 823 (Ala. 1994). See also *Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala. 1994); *Covington v. Exxon Co., U.S.A.*, 551 So.2d 935, 938 (Ala. 1989); and *Ott v. Fox*, 362 So.2d 836, 839 (Ala. 1978).

Pursuant to Ala. Code 1975 § 11-47-190, Defendant cannot be liable for intentional torts.[7] However, Plaintiff does not assert that Defendant converted his property intentionally. Instead, Plaintiff argues that Defendant's conduct constituted negligence, thereby avoiding the scope of Ala. Code 1975 § 11-47-190. Plaintiff

---

[7] Ala. Code 1975 § 11-47-190 provides in part: "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while in the line of his or her duty. . . ."

16

points out that a conversion claim based on negligence is not barred by Ala. Code 1975 § 11-47-190.  See *Crowe v. City of Athens*, 733 So.2d 447, 451 (Ala.Civ.App. 1999).

Plaintiff does not allege that Defendant was negligent in its method of notifying Plaintiff of the auction.[8]  Plaintiff argues instead that Defendant was negligent in adopting its policy of mailing notice to Plaintiff via First Class mail rather than certified mail.  He asserts that, because Defendant's notification policy violated due process, the sale of the Buick constituted a wrongful interference with his property.  Other than his argument that he did not receive notice prior to the auction, Plaintiff offers no evidence that the sale was improper.

Plaintiff thus supports his conversion claim with the same rationale that he asserted in his due process argument.  As explained in regard to Plaintiff's due process claim, Defendant's efforts to notify him of the auction were constitutionally sound.  Therefore, Defendant did not wrongfully interfere with Plaintiff's property rights.

Plaintiff argues only one additional basis for the court to decide that Defendant converted his property.  He has offered an opinion issued by the Alabama Department

---

[8] Contrary to this argument, however, Plaintiff consistently accuses Defendant of "knowing" that the attempted notice would not reach him.  (Doc. 10, Ex. 11, pg. 3).

17

of Finance (hereinafter "the Department") that articulates the Department's policy against granting title to impounded vehicles that are sold by Defendant at public auction. (Doc. 10, Ex. 11, pg. 3). The Department has adopted this policy because it believes that Defendant does not afford due process to owners and lienholders of these vehicles. (Id.). However, Plaintiff points to no binding authority in support of this argument. As previously discussed, the full weight of binding authority cited by both parties to this action supports the opposite view. Therefore, the court cannot agree with the Department in the face of more substantial authority that is inconsistent with the Department's viewpoint on this issue.

Plaintiff offers no other argument or evidence to show that Defendant wrongfully interfered with his property. Consequently, Plaintiff has failed to evince evidence sufficient to support a prima facie case of conversion.

## IV.   CONCLUSION

The court finds no basis for liability under 42 U.S.C. § 1983 under either the Due Process or Equal Protection Clauses of the United States Constitution based on Plaintiff's arguments and the facts of this case. Similarly, the court finds that Plaintiff has failed to establish a prima facie case of conversion. Consequently, Defendant's

Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims.[9]

A separate order will be entered.

**DONE** this the 5th day of March, 2007.

_(signature)_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9]Defendant argues additionally that Plaintiff's Complaint must be dismissed because he has failed to identify Alvin Tucker and Terry Stodghill as indispensable parties under Fed. R. Civ. P. 19(a).  However, because Defendant's Motion is granted on other grounds, the court need not address this issue.